**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __12/29/25__

December 16, 2025

**VIA ECF**

Plaintiffs' application for a discovery conference is GRANTED to the extent that the Court will address the issues raised herein at the status conference scheduled for January 14, 2026 at 10:00 a.m. *See* Dkt. 62. The parties are also reminded that they must submit a joint status update letter no later than January 7, 2026. *Id*. SO ORDERED.

_____

Barbara Moses
United States Magistrate Judge
December 29, 2025

The Honorable Barbara Moses
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

> **Re:** ***Factor75, LLC, et al. v. Ruprecht Company*, No. 24-cv-04094 (S.D.N.Y.)**

Dear Judge Moses:

We write on behalf of Plaintiffs Factor75, LLC and Grocery Delivery E-Services USA Inc. (together, "Factor") to request a discovery conference concerning the refusal by Defendant Ruprecht Company ("Ruprecht") to produce hundreds of responsive documents based on facially improper assertions of privilege and inconsistent characterizations of those documents.  Factor respectfully requests that the Court (1) compel Ruprecht to produce 226 documents withheld on legally defective grounds and (2) compel Ruprecht to produce 30 documents among non-lawyers that Ruprecht has described inconsistently or, alternatively, review those 30 documents *in camera*.

## I.      Background

Ruprecht has frustrated Factor's ability to depose Ruprecht's witnesses by wrongfully withholding scores of key documents.

These issues came to light on November 3, 2025, when the parties exchanged privilege logs.[1]  Ruprecht revealed it was withholding 336 documents and had redacted 30.  The majority of Ruprecht's privilege claims were patently improper:  Ruprecht asserted "Family" privilege over cover emails and attachments that Ruprecht acknowledged lacked any privileged content; withheld communications with insurers and their agents that "relat[ed] to coverage"; and

---

[1] A copy of Ruprecht's initial privilege log is attached as Exhibit A.

Patterson Belknap Webb & Tyler LLP    1133 Avenue of the Americas, New York, NY 10036    T 212.336.2000    F 212.336.2222

16179561

Hon. Barbara Moses
December 16, 2025
Page 2

unaccountably claimed attorney-client privilege over communications among non-lawyers and with third parties.

Factor sent Ruprecht a letter detailing those deficiencies on November 12.[2] Ruprecht responded on November 24 that it would "not revise its log or produce any documents contained therein."[3]

The parties had a one-hour teleconference on November 24.[4]  During the teleconference, Factor raised another issue with Ruprecht's privilege log:  Ruprecht claimed that numerous communications among non-attorneys were "at the direction of counsel" but had not offered any factual support for that assertion.  Factor identified those documents in a November 25 follow-up email.[5]

On December 3, the parties discussed Ruprecht's privilege log during another one-hour teleconference.[6]  This time, Ruprecht said that it would consider Factor's objections and prepare an amended log.

Ruprecht sent Factor an amended privilege log on December 8.[7]  In addition to maintaining Ruprecht's claims of "Family" and "Insured-Insurer" privilege, the amended log replaced Ruprecht's descriptions of numerous documents with new and entirely different characterizations of their contents.

On December 11, Factor notified Ruprecht that, because meet-and-confer efforts had failed and because the breadth of Ruprecht's dubious privilege assertions is hampering Factor's ability to prepare for depositions of Ruprecht's witnesses, Factor would raise the issues with the Court.

---

[2] *See* Exhibit B.

[3] *See* Exhibit C.

[4] David Kleban, Benjamin Seymour, and Voratida Sangchant attended for Factor.  Charles DeVore, Brian Muldrew, and Leigh Brissenden attended for Ruprecht.

[5] *See* Exhibit D.

[6] David Kleban, Clinton Morrison, and Benjamin Seymour attended for Factor.  Charles DeVore, Brian Muldrew, and Leigh Brissenden attended for Ruprecht.

[7] A copy of Ruprecht's amended privilege log is attached as Exhibit E.

Hon. Barbara Moses
December 16, 2025
Page 3

## II.     "Family" Privilege

Ruprecht has taken the unconventional and inappropriate approach of withholding an entire document "family" when any single document within the family is allegedly privileged.[8]  Thus, Ruprecht is withholding non-privileged cover emails because their attachments are purportedly privileged, and non-privileged attachments because their cover emails are purportedly privileged.  But a "transmittal email [that] does not contain any confidential information or legal advice … is not itself privileged." *Shih v. Petal Card, Inc.*, 565 F. Supp. 3d 557, 569 n.4 (S.D.N.Y. 2021) (Moses, J.).  Likewise, a document "is not privileged simply by being attached to a privileged email." *Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, 2020 WL 1970697, at *6 (S.D.N.Y. Apr. 24, 2020); *see also Joint Stock Co. "Channel One Russ. Worldwide" v. Russ. TV Co.*, 2020 WL 12834595, at *4 (S.D.N.Y. May 1, 2020) (Moses, J.).

Ruprecht rejects that authority, arguing that the superior, "more nuanced" view is that producing a privileged document's family could allow the receiving party to "reverse engineer" privileged communications.  Ex. C at 1.  Yet even courts adopting this minority view recognize that document families are not "*automatically* privileged," *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at *8 (S.D.N.Y. Jan. 24, 2018); rather, the risk of reverse engineering "depend[s] on the circumstances," *id.*  However, Ruprecht's position is explicitly "categor[ical]" and its assertion of privilege regarding non-privileged family members is anything but "nuanced."  *See* Ex. C at 1.

The Court should reject Ruprecht's sweeping claims of privilege-by-association.

## III.     "Insured-Insurer" Privilege

Ruprecht's assertions of "Insured-Insurer" privilege are also meritless.[9]  Ruprecht contends that Illinois law shields any communications "relating to coverage" or "relat[ing] to the insurer's duty to defend" from discovery.  *See* Ex. C at 2.  Not so.  Even assuming Illinois law applies, it does not permit withholding any document theoretically related to an insurer's duty to defend.  Rather, Ruprecht must "prove" its insurer had a "duty to defend" when Ruprecht communicated with the insurer.  *Chi. Tr. Co. v. Cook Cnty. Hosp.*, 698 N.E.2d 641, 649 (Ill.

---

[8] This objection applies to entries 11, 17, 21–23, 29–33, 38, 46, 48–51, 66, 70–71, 74–77, 83–86, 103–104, 106–108, 112–123, 132, 135, 140, 174–176, 187–198, 201–204, 206–210, 213–218, 222–225, 227–230, 232–238, 240, 242–245, 247–255, 258–262, 265–268, 270–290, 294–297, 300–304, and 306–310 on Ruprecht's amended privilege log (Exhibit E).

[9] This objection applies to entries 20–23, 52–58, 61, 63–65, 67–69, 73–76, 80–105, 109–111, 124–130, 142–143, 153, 169–173, 177, 179–185, 219–220, 246, 269, 291–293, 298–299, and 323–324.

Hon. Barbara Moses
December 16, 2025
Page 4

App. Ct. 1998). With good reason: Once an insurer has a duty to defend, its communications with an insured fall under "an offshoot of the attorney-client privilege." *Id.* at 651. By contrast, when an insurer is deciding whether to cover a loss, the insurer is potentially adverse to the insured. Thus, "the Insurer privilege applies only where the [insurer] acts as a legal adviser, not as 'a claims adjuster.'" *Prairie Mgmt. & Dev., Inc. v. Columbia Mut. Ins. Co.*, 2025 WL 588635, at \*3 (N.D. Ill. Feb. 24, 2025) (citation omitted). Ruprecht has never claimed—much less proven—that its insurers had a duty to defend and provided legal advice in the withheld documents.

Ruprecht's assertions of insured-insurer privilege are fatally flawed in other respects, too. Those assertions rest on two insurance policies. Neither supports Ruprecht's claims.

First, Ruprecht's communications with Talbot, AmWins, Validus, and RQA concerned its recall insurance policy. But that policy is expressly governed by New York law, and New York does not recognize an insured-insurer privilege. *See Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693, at \*8 (S.D.N.Y. Dec. 5, 2002). Furthermore, even if Illinois law applied, Ruprecht cannot prove a *duty* to defend under the recall policy, because that policy merely gives the insurer the *right*, at their election, to defend Ruprecht in covered litigation. *See State St. Bank & Tr. Co. v. U.S. Fid. & Guar. Co.*, 539 N.E.2d 779, 780 (Ill. App. Ct. 1989) (underwriter with "the right to defend 'at the underwriter's election,' … had no duty to defend").

Second, Ruprecht corresponded with Hylant (an insurance agent) pursuant to its commercial general insurance policy. However, the policy refutes any duty to defend here, since it excludes losses arising from a recall due to known or suspected deficiencies with Ruprecht's products. Because liability from the recall could not "actually or potentially" fall "within the policy's coverage," the insurer never had a duty to defend. *Northbrook Prop. & Cas. Co. v. Transp. Joint Agreement*, 741 N.E.2d 253, 254 (Ill. 2000). Thus, Ruprecht's communications with Hylant are not privileged.

The insured-insurer privilege is a limited extension of the attorney-client privilege, not a license to withhold any communication "relating to coverage." Ruprecht's assertion to the contrary misstates Illinois law and its own insurance policies.

Hon. Barbara Moses
December 16, 2025
Page 5

## IV.   Communications Among Non-Lawyers

Ruprecht is withholding 30 communications among non-attorneys based on inconsistent accounts of their contents.[10]  Ruprecht's initial privilege log contained facially deficient entries for these documents.  When Factor challenged those entries, Ruprecht replaced them with completely different descriptions.  That reversal raises serious questions about the veracity of Ruprecht's characterizations, leaving Factor unable to assess Ruprecht's privilege claims.

Ruprecht initially withheld 20 communications among non-attorneys based on the claim that these communications were "prepared at the direction of counsel."  Factor asked Ruprecht to identify the attorney(s) who directed those communications, but Ruprecht insisted that such detail was unnecessary.  In its amended privilege log, however, Ruprecht withdrew 17 of its claims that documents were prepared at the direction of counsel.  Ruprecht produced a handful of those documents; none suggests any attorney involvement, much less "direction."  As for documents Ruprecht continues to withhold, Ruprecht now claims they were "prepared for counsel's review and input."  The assertion that a (still-unnamed) attorney eventually reviewed a document is a far cry from counsel directing those communications.  In any event, Ruprecht's latest claim remains insufficient:  "[P]utting otherwise non-privileged business records … in the hands of an attorney … does not render the documents privileged."  *United States v. Walker*, 243 F. App'x 621, 623 (2d Cir. 2007).

Factor also questioned entries in Ruprecht's initial log suggesting that non-attorneys had sought "legal advice" from one another.  Here, too, Ruprecht responded with a new explanation, stating that the documents "concern the exchange of information for the purpose of a lawyer providing legal advice."  Ex. C at 2.  Ruprecht's story then changed *again* in its amended privilege log, which avers that the non-attorneys were "discussing advice to be sought," "directing privileged communication[s] with counsel," or "relaying and discussing privileged communication[s] with counsel."  Ruprecht's inability to offer a consistent explanation of why these documents are privileged indicates they should be produced (with redactions, as necessary, of any text that actually reflects the content of confidential attorney-client communications).

Finally, Ruprecht is withholding communications with Alex Zhang, a partner at the Chinese private equity firm that owns Ruprecht's parent company.[11]  Factor reminded Ruprecht that communications with a third-party investor are not privileged.  Ex. B at 2.  Ruprecht responded with a revised theory: that Zhang is a member of Ruprecht's board of directors, so his communications are privileged.  Factor inquired how Ruprecht determined

---

[10] This objection applies to entries 9–10, 12, 36–37, 39, 41, 59–60, 72, 78, 133, 138–139, 141, 144, 149–150, 154, 161, 165, 167, 178, 205, 211, 311–312, 322, and 334–335.

[11] *See* entries 59–60, 144, 149–150, 161, and 178.

Hon. Barbara Moses
December 16, 2025
Page 6

Zhang was acting as a director, instead of an investor, in the withheld communications. Ruprecht rejected the possibility of distinguishing between his roles and has offered no evidence or explanation to indicate that Zhang was communicating on behalf of Ruprecht's five-member board.  But one thing is clear:  Zhang's mere status as a director does not establish a privilege, since a single director cannot dictate a corporation's legal strategy.  *See Aries Ventures Ltd. v. Axa Fin. S.A.*, 729 F. Supp. 289, 295 (S.D.N.Y. 1990) ("[A]n individual director has no power to act on behalf of the corporation, absent board authorization.").  By acting unilaterally, Zhang communicated with Ruprecht as an investor, rather than a director, and the correspondence Ruprecht is withholding is non-privileged.

Ruprecht's latest descriptions of the 30 communications among non-lawyers do not meet its burden of establishing that these communications are privileged in their entirety. Moreover, the inconsistency of Ruprecht's explanations creates significant doubt about its privilege assertions.  The Court should therefore order Ruprecht to produce these 30 documents or, alternatively, review them *in camera*.

* * *

In accordance with Local Rule 37.2 and Your Honor's Individual Practice Rule 2b, Factor respectfully requests that the Court schedule a discovery conference.

Respectfully submitted,

*/s/ David S. Kleban*

David S. Kleban